IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARJORIE MORGENSTERN, | No. C 05-03156 SI |
| Plaintiff, | **ORDER GRANTING IN PART PLAINTIFF'S MOTION TO COMPEL** |
| v. | |
| INTERNATIONAL ALLIANCE OF THEATRICAL STAGE EMPLOYEES, LOCAL 16, | |
| Defendant. | |

By letter brief, plaintiff seeks to compel defendant's response to discovery requests. Having considered the papers submitted,[1] and for good cause appearing, the Court hereby GRANTS IN PART plaintiff's motion.

**BACKGROUND**

Plaintiff Marjorie Morgenstern is a female theatrical stage worker who has, since 1996, unsuccessfully sought membership in the International Alliance of Theatrical Stage Employees, Local 16 ("IATSE"), the defendant. Compl. ¶ 5. Plaintiff alleges that IATSE, which provides job referrals for both union members and non-members, has not supplied her with adequate referrals over the past 10 years. Compl. ¶ 13. Defendant's refusal to admit plaintiff as a member and its ongoing failure to supply job referrals are, according to plaintiff, the result of gender-based discrimination and retaliation for her filing of a sex-based discrimination complaint with the EEOC in April 2001. Compl. ¶¶ 12-15.

---

[1] Plaintiff's letter brief, dated June 6, 2006, appears at docket entry # 25. Defendants' opposition letters and plaintiff's reply appear at docket entries #26, 27 and 28.

IATSE contends that (1) plaintiff has failed to meet the union's gender-neutral membership requirements[2] and (2) IATSE plays only a limited role in the hiring and referral process. According to IATSE, employers frequently hire stage workers without the help of the union. Def. Letter Brief at 1. On other occasions, the union facilitates the hiring of stage workers in one of three ways. First, employers may ask IATSE to simply "send over" day workers without specifying whom to send. *Id.* at 2. Second, employers may ask the union to contact and send specific workers. *Id.* Third, employers may request "skill lists" that are maintained by the union. *Id.* These lists contain names of both union members and non-members and are organized by skill type. *Id.* Morgenstern is currently listed on five skill lists: prop assistant (112 total names on list), prop extras (145 names), greens extras (51 names), set dressers swing (191 names) and set decorator (73 names).[3] *Id.* The lists are updated weekly.

On August 4, 2005, plaintiff filed an action before this Court seeking compensatory and punitive damages for IATSE's alleged violations of Title VII of the Civil Rights Act.[4] The current discovery dispute followed.

## LEGAL STANDARD

Parties may obtain discovery of any matter, not privileged, that is relevant to the claim or defense of any party. Fed. R. Civ. P. 26(b)(1). Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to admissible information. *Id.* The court, however, can limit discovery if the discovery sought is unnecessarily duplicative or if the expense of the proposed discovery would outweigh its likely benefit. Fed. R. Civ. P. 26(b)(2)(i)-(iii).

---

[2] Membership in IATSE requires, among other things, that the prospective member have earned a specified level of wages from employers under IATSE contracts over the previous 12 months. Morgenstern's qualifying wages over the last ten years are approximately 1/10th of the requirement for a single year.

[3] The numbers of names on the lists are as of March 30, 2006.

[4] Title VII prohibits unions from denying membership to or refusing to refer individuals based on their sex. 42 U.S.C.A. § 2000e-2(c)(1)-(2). It also prohibits unions from causing or attempting to cause employers to discriminate. 42 U.S.C.A. § 2000e-2(c)(3); s*ee also Yott v. North American Rockwell Corp*, 602 F.2d 904, 909 ("Title VII clearly imposes the same duty not to discriminate on a union as it does the employer").

The plaintiff in a Title VII disparate treatment case bears the initial burden of establishing a prima facie case of discrimination. *Texas Dep't of Cmty Affairs v. Burdine*, 450 U.S. 248, 253-54 (1981). The plaintiff can meet this initial burden by introducing direct evidence of discrimination or by establishing that: (1) she is a member of a protected class, (2) she was qualified for the positions she sought, (3) she experienced an adverse employment action and (4) similarly situated non-class members were treated more favorably. *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).

A plaintiff can establish a prima facie case of retaliation by showing that: (1) she engaged in a protected activity, (2) she was subjected to an adverse employment action, and (3) a causal link exists between the protected activity and the adverse action. *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000).

**DISCUSSION**

Through the disputed discovery requests, plaintiff seeks information on the composition of IATSE's skill lists; wages and hours worked for individuals on those lists; employer crew lists; and documents related to past discrimination and retalitiation litigation involving IATSE. For most of the requests, plaintiff seeks information dating from January 1, 1996 to June 2006. Defendant objects to these requests primarily on the grounds that they are irrelevant and overly burdensome.[5] In particular, defendant argues that discovery should be limited to employers and jobs to which Morgenstern applied and was rejected. Def. Brief at 4. Plaintiff's main argument, however, is that IATSE failed to adequately refer her to jobs and that, as a result, she was generally unaware of open positions. Focusing discovery on those few positions to which she applied would therefore be too limiting.

To the extent that this Court compels production of the requested documents, defendant also requests that the costs of production be shifted to the plaintiff.

---

[5] When originally responding to plaintiff's requests, defendant apparently raised several objections based on third person privacy and freedom of association. These objections, however, are not raised in defendant's opposition to plaintiff's current motion and are therefore waived.

3

**1.     Document Request No. 45: Referral Lists**

Plaintiff requests that defendant provide documents reflecting the name, gender, skill, and union membership status for individuals on each of the five skills lists on which plaintiff appears. Plaintiff seeks this information for all five lists since January 1, 1996. To date, defendant has provided only the lists dated March 30, 2006, which included only the first names and skill of the individuals on the lists.

Defendant objects to supplying additional documents on the grounds that it does not keep electronic records of past lists and that the information is irrelevant. Defendant admits, however, that it does retain copies of the referral lists in an employer's paper file when an employer requests a list. Defendant estimates that searching through the employers' files for the referral lists will cost approximately $500.

The documents sought are highly relevant to plaintiff's claims. The gender of those on the lists directly relates to plaintiff's contention that IATSE engages in sex-based discrimination. The extent to which males on the list are union members and females are not is also relevant to plaintiff's claims. Full names may also be important in tying list membership to wage and other information. Combining the list and wage data might, for example, indicate whether males are more likely to be selected from the lists than females. Lastly, five hundred dollars does not seem like an overly burdensome expense given the potential value of the lists.

**2.     Document Request Nos. 39-43: Income information for referral list members**

Plaintiff's Request for Production Nos. 39-43 ask for documents containing income information for individuals (including both union and non-union members) on the referral lists requested in Request No. 45. The information sought includes wages earned, health and welfare ("H&W") contributions,[6] pension contributions and work fees for each year since 1996. IATSE acknowledges that it possesses H&W contribution records for every worker who has worked for an employer covered by

---

[6] Health and welfare contributions to the Local 16's Health and Welfare Trust Plan are made by employers on behalf of workers.

4

a collective bargaining agreement.[7] Def. Brief at 6. Moreover, IATSE's H&W records "contain the pay periods, wages and H&W contributions" for each worker. Def. Letter at 4. Defendant contends, however, that this information is not organized by whether the worker received a referral from the union or was hired directly by the employer. Since employers, at least according to IATSE, frequently hire workers directly but still make H&W contributions, any data provided by IATSE would not accurately portray the impact of referrals.

The income data is undoubtedly relevant to plaintiff's discrimination claims. Income and benefits earned by similarly-situated individuals would indicate whether those individuals have been treated more favorably and would also help establish appropriate damages. IATSE argues that this information is irrelevant because they are not the employers and do not typically participate in hiring decisions. This argument is flawed for two reasons. First, the extent of IATSE's involvement in the hiring process is a disputed matter of fact between the parties. The discovery process is intended to help resolve such a dispute.[8] Second, unions have been held accountable for discriminatory practices by employers even when the union does not directly participate in employment decisions. *See Sears v. Bennett*, 645 F.2d 1365, 1374-75 (10th Cir. 1981) (holding that it was unlawful for a union to "cause or attempt to cause an employer to discriminate" even when the union had no formal hiring authority). Title VII also specifically prohibits unions from encouraging discrimination by employers. 42 U.S.C.A. § 2000e-2(c)(3).

Given the relevancy of the income information, the defendant must provide documents reflecting the that information (including wages, pay periods and H&W contribution) by year since 1996 for each individual on referral lists requested in Request No. 45. Since defendant has supplied the lifetime wages and H&W contributions for plaintiff, who has never been a union member, there is no reason to believe that defendant does not retain this same information for all individuals on the referral lists. *See* Def. Letter at 2.

---

[7]H&W contributions are made under the union's collective bargaining agreement whether or not the worker is a member of the union. Def. Brief at 2.

[8]Plaintiff possesses, for example, a letter from an EEOC investigation that indicates that IATSE made hiring decisions on behalf of at least one employer. Pl. Brief at 2; Def. Brief, Ex. A.

5

Defendant also argues that collecting the requested documents will be overly burdensome, perhaps costing as much as $2500.[9] Once the lists sought in Request No. 45 have been compiled (estimated at around $500), it is unclear why producing at least the H&W records would be so expensive. If those records contain pay periods, wages and H&W contributions then the plaintiff should be satisfied. However, even if the income information requires additional research and expense by IATSE, the importance of this information outweighs its burden.

The Court notes, however, that the information to be produced is highly personal to the individuals whose information is being provided. Accordingly, the Court ORDERS that prior to the production of these records, the parties stipulate to an appropriate protective order concerning this information, so that it will be used only for purposes of this litigation. If the parties cannot agree to the terms of a protective order, the Court will upon request issue the standard protective order available on the Northern District website.

### 3.    Interrogatories 17-21: Days worked by referral list members

In these interrogatories, plaintiff requests that defendant provide the number of days worked for each individual on the referral lists. Defendant asserts that it does not systematically collect information on the number of days worked[10] and that compiling such historical information from the records it possesses would be a difficult process.

It is unclear what significant value the days worked data add over the more readily available wage and pay period information sought in Requests No. 39-43. Plaintiff does not assert that hourly or daily rates vary significantly across workers in the same skill class and does not indicate what value the days worked data provide independent of the wage information.

---

[9] Defendant argues that it must search the records of 572 workers to find the information requested because the five March 30, 2006, skill lists contain 572 names. This assertion is misleading. Plaintiff's name, for example, appears on all five lists. Assuming that plaintiff is not the only multiple listing, the number of unique names is below 572 (potentially as few as 200). On the other hand, plaintiff is requesting the lists for the past ten years, not just for March 30, 2006. This request will obviously increase the number of workers by some currently unknown amount.

[10] H&W contribution records include only wages and pay periods, not days or hours worked. Def. Brief at 4.

6

Because the burden of producing the days worked information is fairly high and its additional value is minimal, defendant need not answer interrogatories 17-21.

### 4. Document Request No. 46: Employer crew lists

In Request No. 46, plaintiff seeks employer crew lists.[11] According to defendant, crew lists are maintained by employers who do not always forward final crew lists to IATSE. Def. Brief at 7. Defendant further asserts that compiling the crew lists for the past ten years would require an expensive search of its employer records.

As with the days worked request, it is not clear what value the crew lists would add beyond the already requested wage information. If a worker earned wages during a given pay period, that worker was presumably working on a production. Plaintiff does not argue that it is necessary to know which employer a worker was working for at a given time. Plaintiff's only argument in favor of compelling a response is that the crew list information will allow for statistical analysis of hiring practices within IATSE's jurisdiction. The wage and referral list information should suffice for this analysis.

Therefore, given the expense of compiling the crew lists and its limited value, defendant need not supply the crew lists.

### 5. Document Request No. 38: H&W contributions for new union members

In this request, plaintiff seeks H&W contribution data for new apprentice members since 1996. Defendant had agreed to provide the information for all new members since April 2000, but now asserts that the information will be too expensive to produce. Defendant estimates that the cost to complete the request will be approximately $500 - $600. They are presumably referring only to the data for the 300 new members since April 2000.

Because plaintiff alleges that her attempt to join IATSE was unsuccessful as a result of sex-based discrimination, wage information for new members is highly relevant. The information may be used to determine if new female members received less work than new male members and to establish

---

[11] A crew list is a list of employees working on a given production.

appropriate damages. In addition, to the extent that new union members appear on the referral lists and are therefore already covered by the requests above, no additional work is required.

Given the potential value of the H&W contribution information for new members, IATSE is compelled to provide the information for all new apprentice members since January 1, 1996. However, as with the income information discussed in paragraph 2 above, this information may be produced subject to the terms of an appropriate protective order.

**6.     Document Request No. 48: Previous litigation materials**

Plaintiff also asks IATSE to provide all documents related to past litigation of discrimination or retaliation claims. Plaintiff argues that the documents are reasonably calculated to lead to admissible evidence because evidence of past discrimination is often allowed in an employment discrimination case. Defendant contends that no authority supports the position that they must supply Morgenstern with past litigation documents.

Evidence, even anecdotal evidence, of past discrimination may be admissible in an employment discrimination action. *See Obrey v. Johnson*, 400 F.3d 691, 698 (9th Cir. 2005); *see also Brown v. Trustees of Boston Univ.*, 891 F.2d 337, 349 (1st Cir. 1989) (holding that prior discriminatory conduct towards a third-party employee may be probative of employer's attitude towards the plaintiff). Documents related to past discrimination and retaliation litigation are therefore reasonably calculated to lead to admissible evidence.

Plaintiff's request is nonetheless too broad. Plaintiff alleges discrimination based on her gender. In each of the cases cited by plaintiff, the admissible evidence of past discrimination was of the same type alleged by the plaintiff. *See Obrey*, 400 F.3d at 691; *Brown*, 891 F.2d at 349; *United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711 (1983). Therefore, plaintiff is entitled only to documents, not otherwise privileged, relating to litigation involving allegations of sexual discrimination or retaliation against IATSE.

**7.     Defendant's request for cost sharing or shifting**

Defendant also moves for a protective order that shifts the cost of the requested discovery onto

8

plaintiff. Under the discovery rules, "the presumption is that the responding party must bear the expense of complying with discovery requests." *Oppenheimer Fund Inc. v. Sanders*, 437 U.S. 340, 358 (1978). Cost-shifting should only be considered when discovery imposes an "undue burden or expense" that outweighs the likely benefit of the discovery. Fed. R. Civ. P. 26(b)-(c).

This Court concludes that the remaining discovery requests do not impose a burden on IATSE that is sufficient to warrant cost-shifting or sharing at this time. Because of the limitations this order places on plaintiff's discovery requests, the defendant's total remaining costs are on the order of $1,500 to $2,000, by its own estimate. As noted previously, the potential value of such information outweighs this cost.[12]

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS IN PART plaintiff's motion. Defendant is ordered to respond in full to plaintiff's Request for Production No. 45, to respond to Request Nos. 38, 39-43, and 48 to the extent detailed above. Defendant need not respond to Interrogatories 17-21 or Document Request No. 46. [Docket No. 25].

**IT IS SO ORDERED.**

Dated: August 17, 2006

SUSAN ILLSTON
United States District Judge

---

[12] A typical cost-shifting analysis requires application of one of several multi-factor tests. *See, e.g., Rowe Ent., Inc. v. William Morris Agency, Inc.*, 205 F.R.D. 421 (S.D.N.Y. 2002) (employing an 8 factor test); *Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309 (S.D.N.Y. 2003) (employing a modified *Rowe*-test that includes 2 additional factors). Defendant, however, has provided no case authority in support of its position nor an analysis of any of these tests.

9